## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| Pamela Sue Trewhitt, on behalf of herself and all others similarly situated | ) ) ) | |
| PLAINTIFF, | ) ) | CASE NO. _____ |
| v. | ) ) | |
| ConAgra Foods, Inc. a Delaware Corporation | ) ) ) | JURY TRIAL DEMANDED |
| DEFENDANT. | ) ) | |

## CLASS ACTION PETITION

Plaintiff Pamela Sue Trewhitt brings this action on her own behalf and as a representative of a class of persons similarly situated, pursuant to Rule 23 of the Federal Rules of Civil Procedure, who purchased Parkay Spray®.  Plaintiff's allegations against Defendant are based upon information and belief and upon investigation of Plaintiff's counsel, except for allegations specifically pertaining to Plaintiff, which are based upon Plaintiff's personal knowledge.

## NATURE OF ACTION

1.      This is a putative class action on behalf of a class of persons seeking redress for Defendant's deceptive practices in its labeling and marketing of Parkay Spray ("Spray Butter").

2.      Consumers are increasingly health conscious and, as a result, many consumers are interested in "fat-free", "non-fat" and "zero calorie" food alternatives for themselves and their families.

1

3.     Defendant's Spray Butter is deceptively labeled, marketed and sold to Plaintiff and other consumers as "fat free" and "calorie free."

4.     In reality, Defendant's Spray Butter is neither "Fat Free" nor "Calorie Free."  Parkay Spray contains 832 calories and 93 grams of fat per bottle.

5.     Defendant's claims regarding Spray Butters are false and misleading because its product is improperly labeled "fat free" and "calorie free."

6.     Defendant's claims regarding Spray Butters are false and misleading because its product labels include artificially small "serving sizes" that fail to account for the manner in which these products are customarily consumed.

7.     Defendant's claims regarding Spray Butters are false and misleading because its labels do not disclose that Spray Butter contains ingredients that are fats which, even in small quantities, add trivial amounts of fat per serving.

8.     As a result of its deceptive marketing and advertising, Defendant has generated substantial revenues from the sale of Spray Butter.

## THE PARTIES

9.     Plaintiff Pamela Sue Trewhitt is, and was at all relevant times, a citizen of Gretna, Nebraska.   Plaintiff purchased and consumed Spray Butters within the jurisdiction of this Court.

10.     Defendant ConAgra Foods ("ConAgra") is a Delaware corporation with its principal place of business in Omaha, Nebraska.  Defendant manufactures and markets brand name food products throughout the nation, including Omaha, Nebraska.

2

11.     Defendant, upon becoming involved with the manufacture, distribution, advertising, marketing and sale of Spray Butter, knew or should have known that its representations regarding Spray Butter were false and misleading.

## JURISDICTION AND VENUE

12.     This Court has jurisdiction over this class action under 28 U.S.C. 1332(d), which, under the provisions of the Class Action Fairness Act ("CAFA"), provides federal courts original jurisdiction over any class action in which any member of a class is a citizen of a state different from any defendant, and in which the matter in controversy exceeds in the aggregate the sum of $5 million, exclusive of interests and costs.  Plaintiff seeks certification of a class of all persons who purchased Parkay Spray in any state but Missouri.  Such persons reside in the 49 United States and the District of Columbia. Defendant is a citizen of Nebraska and/or Delaware.  The amount in controversy, exclusive of interests and costs, exceeds $5 million.

13.     This Court has personal jurisdiction over Defendant because Defendant ConAgra foods is headquartered in Omaha, Nebraska and thus has sufficient minimum contacts with this District and Nebraska.  Additionally, jurisdiction is appropriate as Defendant ConAgra Foods otherwise intentionally avails itself of the Nebraska market through its marketing and sales of the products in the state of Nebraska and/or by having such other contacts with Nebraska so as to render the exercise of jurisdiction over it by the Nebraska courts consistent with traditional notions of fair play and substantial justice.

14.     Venue is proper pursuant to 28 U.S.C. 1391(a) because ConAgra is headquartered in this District and its principal offices and marketing department are located in this District and because the Court has personal jurisdiction over Defendant.

15.     No other forum would be more convenient for the parties and witnesses to litigate this action.

16.     Nebraska law applies to all claims set forth in this Complaint as Defendant ConAgra is a Nebraska resident, Defendant's principal offices are located in this District, a substantial part of the development of the advertising and marketing giving rise to the claims occurred in this District and all of the misconduct alleged herein was contrived, implemented, and has a shared nexus within Nebraska.

## ALLEGATIONS OF FACT

17.     With approximately $20 billion in annual sales, ConAgra Foods is the second largest packaged-food company in America, serving consumer grocery retailers as well as restaurants and other foodservice establishments.

18.     ConAgra's success admittedly depends on its "ability to identify the tastes and dietary habits of consumers and to offer products that appeal to their preferences, including concerns of consumers regarding health and wellness, obesity, product attributes and ingredients."[1]

19.     As noted by ConAgra's Director of Marketing, "Consumers increasingly have been paying greater attention to their diets, from looking to cut carbs and cholesterol to watching fat and sodium intake."

---

[1] ConAgra Foods, 2012 Annual 10-K, p. 10

4

20.     In 1998, ConAgra purchased the consumer brand, Parkay, a line of margarines in spreadable, sprayable and squeezeable forms.

21.     ConAgra markets its Parkay products as a "guilt-free" alternative to butter and an "excellent dietary choice." This is, in fact, the central message of Parkay's "talking tub campaign" which was first introduced in 1973, "The label says 'Parkay,' the flavor says butter."

22.     ConAgra marketed one particular line of margarines, Parkay Spray as a "calorie free" and "fat free" topping for foods. Such representations were made on various company websites, through press releases and in television media.

23.     As described herein, ConAgra's representations are false and misleading because:

    a.  Parkay Spray does not qualify as "fat free" as a matter of law.

    b.  Parkay Spray does not qualify as "calorie free" as a matter of law.

    c.  Parkay Spray uses artificially small serving sizes to understate the amount of fat and calories in the product.

    d.  Parkay Spray does not disclose that certain ingredients supply "trace amounts of fats" as required by law.

24.     Plaintiff's claims are premised upon violations of applicable food labeling regulations. Plaintiff does not seek to impose any additional labeling requirements other than those mandated by law.

**A.  State and Federal laws govern the labeling of Fat and Calories on Product Labels.**

25.     The Food Drug and Cosmetic Act ("FDCA") regulates the proper labeling of food.  21 U.S.C. §§ 301 *et seq*.

26.     It also vests the Food and Drug Administration ("FDA") with the authority to "protect the public health by ensuring that foods are safe, wholesome, sanitary, and properly labeled."  21 U.S.C. §393(b)(2)(A).

27.     Pursuant to this authority, the FDA has promulgated a comprehensive set of regulations pertaining to labeling requirements.  21 C.F.R.  §101.1 *et seq*.

28.     Defendant misled consumers by failing to comply with this regulatory scheme.

29.     Specifically, during the Class Period, Defendant did not (1) adequately disclose the level of fat and calories per serving in accordance with 21 C.F.R. §343(q); and (2) made "fat free" and "calorie free" nutrient content claims in violation of 21 C.F.R. § 343(r).

**a.  Defendant failed to adequately disclose the amount of fat and calories in Parkay Spray by using unlawful serving sizes.**

30.     21 U.S.C. § 343(q) governs the disclosure of nutrition information on a product label.  It deems a food misbranded unless its label or labeling discloses the total number of calories per serving and the amount of total fat per serving.

31.     The regulations define a "serving size" as an amount of food "customarily consumed" per eating occasion which must be "based on consumption data under actual conditions of use." 21 C.F.R.  §§101.9(b)(1).

32.     As depicted below, Defendant's label defines one serving as one to five sprays.  This artificially small serving size fails to account for the manner in which

6

consumers use its product and does not comport with the serving sizes established by the

Food and Drug Administration at 21 C.F.R. §101.12(b).



33.     Because Defendant used improper serving sizes in calculating the amount of fat and calories per serving, Defendant failed to adequately disclose the amount of fat and calories in Parkay Spray as required by law.

**b.  Defendant made unlawful "fat free" and "calorie free" nutrient content claims.**

34.     Express nutrient content claims are any direct statement about the level (or range) of a nutrient in food that appears outside of the nutrition panel.  21 C.F.R. §101.13(b).  The phrases "fat free" and "calorie free" are two such claims.

35.     A product that uses unlawful serving sizes cannot claim to be "fat free" or "calorie free."  21 C.F.R. §101.62(a)(3); 21 C.F.R. §101.60)a)(3).

36.     Additionally, a product cannot claim to be "fat free" if it contains an added "ingredient that is a fat or is generally understood by consumers to contain fat unless the listing of the ingredient in the ingredient statement is followed by an asterisk that refers to the statement below the list of ingredients, which states 'adds a trivial amount of fat' 'adds a negligible amount of fat' or 'adds a dietarily insignificant amount of fat.'" 21 C.F.R. §101.62.

37.     Despite using unlawful serving sizes, Defendant prominently displayed the phrases "calorie free" and "fat free" on its product labels.



38.     And while Defendant listed "soybean oil" and "buttermilk" in its

ingredient list, these terms were not followed by an asterisk and any language disclosing

the presence of fat.

39.     Defendant's failure to disclose trace amounts of fat renders its product

false and misleading.

   **c.  Defendant was aware that Parkay Spray was mislabeled based on
       consumer complaints and FDA warning letters.**

40.     Defendant knew or should have known that its product was mislabeled and engendered confusion among consumers. The internet is replete with complaints echoing that of the named plaintiff.  For example, a contributor to the website menshealth writes, "I could NOT figure out why I simply could not lose hardly even a pound, even though I was working out HARD (two bootcamps) and monitoring calories (not more than 1200 a day) for a couple of years!  Well… I was also literally taking the top of the "fat and calorie free butter" spray and pouring it on all my carefully steamed veggies… when I found out that a bottle of that stuff is 90 fat grams… I was going through 2 bottles a week, and working out and getting fat and unhealthy."[2]

41.     On many occasions, consumers have contacted the company directly about its fat and calorie content claims only to receive vague and misleading responses. For example, a contributor to the website "3 fat chicks on a diet" explains that in response to an angry letter regarding the misleading fat and calorie content of Spray Butter "I got a canned nice nice response and never heard anything else, somehow I am not surprised!"[3]

42.     In March of 2004, the FDA issued a guidance letter to the food industry that indicated the FDA was concerned about the use of improper serving sizes.  The letter stated:

Dear Food Manufacturer:

As you are aware, the Food and Drug Administration (FDA) is involved in an initiative to give consumers helpful information that will enable them to make more informed choices about their diets and lifestyle in an effort to reduce the incidence of overweight and obesity in the United States.  A key component in providing nutrient information to consumers is the "Nutrition Facts" panel on food packages.  In order for this nutrition

---

[2] http://forums.menshealth.com/eve/forums/a/tpc/f/3971017124/m/199101234 (last accessed July 20, 2012)
[3] http://www.3fatchicks.com/forum/calorie-counters/164242-caloriers-parkay-butter-substitute.html (last accessed July 20, 2012)

information to be useful to consumers, it must be accurate and based on a meaningful amount of food.  After the Nutrition Labeling and Education Act was enacted, thereby mandating nutrition labeling, FDA promulgated regulations that specify how serving size must be derived from an appropriate reference amount for the food commodity in question… Therefore, we are taking this opportunity to remind the food industry about the rules for determining an appropriate serving size.  Manufacturers must use the information provided in Title 21 of the Code of Federal Regulations (CFR) sections 101.9(b) and 101.12 to determine a specific serving size for their products…[4]

FDA encourages the food industry to review their nutrition information and assure that the serving size declared is appropriate for the commodity in question.  FDA also encourages manufacturers to refer to our guidance documents at www.cfsan.fda.gov for additional information on serving sizes.

43.     Defendant ignored these consumer complaints and the FDA guidance and continued to use its deceptive and misleading product labels.

### d.  **Plaintiff could not have discovered, in the exercise of reasonable diligence, that Defendant's product labels were misleading.**

44.     Plaintiff was a reasonably diligent consumer looking for products that were fat-free and calorie-free alternatives to butter.  Nevertheless, Plaintiff did not discover that ConAgra's labeling was false, deceptive, or misleading until July 2012.

45.     Plaintiff was unaware that Parkay Spray contained 93 grams of fat and 832 calories per bottle and did not quality as "fat free" or "calorie free" based on amounts customarily consumed. Plaintiff was also unaware that Parkay Spray contained added ingredients that supplied certain amounts of fat per serving.

46.      Plaintiff is not a nutritionist, food expert, or food scientist; Plaintiff is a lay consumer who did not possess Defendant's specialized knowledge or food testing

---

[4] Letter to Food Manufacturers about Accurate Serving Size Declaration on Food Products, March 12, 2004, available online at:
http://www.fda.gov/Food/LabelingNutrition/FoodLabelingGuidanceRegulatoryInformation/InspectionCompliance/WarningOtherLetters/ucm110234.htm (last accessed July 20, 2012).

capabilities which would have otherwise enabled her to see through Defendant's deceptive marketing and advertising.

47.     Plaintiff, in the exercise of reasonable diligence, could not have discovered Defendant's practices earlier because, like nearly all consumers, Plaintiff does not have food testing capabilities whereby she could have uncovered the true nutritional content of Parkay Spray.

**e.  Defendant's misrepresentations cause Plaintiff and the Class ascertainable damages and injury.**

48.     Plaintiff purchased Parkay Spray believing it had the qualities sought based on its deceptive advertising and misrepresentations, but the product was actually unsatisfactory to Plaintiff for the reasons described herein.

49.     Parkay Spray costs more than similar products without misleading advertisements and misrepresentations, and would have cost less absent the false and misleading statements.

50.     Plaintiff and members of the Class paid more for Parkay Spray than they otherwise would have had they not been misled by the false and misleading advertisements and misrepresentations complained of herein.  Plaintiff and members of the Class would not have purchased Parkay Spray at the prices they did, or would not have purchased Parkay Spray at all, absent Defendant's false and misleading misrepresentations.

51.     For these reasons, Parkay Spray was worth less than what Plaintiff and members of the Class paid for it.

52.     Plaintiff and members of the Class were induced to and did purchase Parkay Spray instead of competing products based on the false statements and misrepresentations described herein.

53.     Instead of receiving products that have the advantages inherent in being fat-free and calorie-free, Plaintiff and members of the Class received products that were a significant source of fat and calories.

54.     Plaintiff and members of the Class lost money as a result of ConAgra's deception in that they did not receive what they paid for.

55.     Plaintiff and members of the Class altered their position to their detriment and suffered damages in an amount equal to the amount they paid for Parkay Spray.

## CLASS ALLEGATIONS

56.     Plaintiff brings claims pursuant to Rule 23 of the Federal Rules of Civil Procedure individually and on behalf of the following a class of individuals ("the Class"):

All persons who purchased Parkay Spray from August 13, 2008 to the present ("The Class Period") in the District of Columbia or any of the 50 States except Missouri.  Specifically excluded from this Class are Defendant; the officers, directors or employees of Defendant; any entity in which Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of Defendant; also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, any juror assigned to this action and those claiming that they have suffered any personal injury as a result of consuming Defendant's misbranded products.

13

57.     The class is sufficiently numerous and includes thousands of persons who purchased Parkay Spray.  Thus, joinder of such persons in a single action or bringing all members of the Class before the Court is impracticable for purposes of Rule 23(a)(1) of the Federal Rules of Civil Procedure. The disposition of the Class members' claims in this class will substantially benefit both the parties and the court.

58.     The class is readily ascertainable through Defendant's business records. Notice can be provided to Class members by publication of notice by internet, radio, newspapers and magazines and through techniques of notice similar to those customarily used in other consumer fraud cases and complex class actions.

59.     There are questions of law and fact common to the Class for purposes of Rule 23(a)(2) of the Federal Rules of Civil Procedure. Defendant's advertising, marketing, labeling and promotional practices were supplied uniformly to all members of the Class, so that the questions of law and fact are common to all members of the Class. All Class members were and are similarly affected by having purchased Parkay Spray for their intended and foreseeable purpose as promoted, marketed, advertised, packaged and labeled by the Defendant as set forth in detail herein, and the relief sought herein is for the benefit of Plaintiff and other members of the Class.

60.     Plaintiff asserts claims that are typical of the claims of the entire Class for purposes of Rule 23(a)(3) of the Federal Rules of Civil Procedure.  Plaintiff and all Class members have been subjected to the same wrongful conduct because they have purchased Parkay Spray that does not possess the attributes and benefits that Defendant represents. Plaintiff and the Class have thus all overpaid for Parkay Spray and/or purchased Parkay Spray that they otherwise would not have.

61.     Plaintiff will fairly and adequately represent and protect the interests of the other Class members for purposes of Rule 23(a)(4) of the Federal Rules of Civil Procedure. Plaintiff has no interests antagonistic to those of other Class members. Plaintiff is committed to the vigorous prosecution of this action and has retained counsel experienced in litigation of this nature to represent her. No conflict exists between Plaintiff and Plaintiff's class members and she anticipates no difficulty in the management of this litigation as a class action.

62.     Class certification is appropriate under Rule 23(b)(2) of the Federal Rules of Civil Procedure because Defendant has acted on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.  Defendant's advertising, marketing, labeling and promotional practices were supplied uniformly to all members of the Class.

63.     Class certification is appropriate under Rule 23(b)(3) of the Federal Rules of Civil Procedure because common questions of law and fact substantially predominate over any questions that may affect only individual members of the Class.  Among these common questions of law and fact are;

a.   Whether Defendant misrepresented or omitted material facts in connection with the promotion, marketing, advertising, packaging, labeling and sale of Parkay Spray.

b.   Whether Defendant represented that Parkay Spray has characteristics, benefits, uses or qualities that it does not have;

    c.   Whether Defendant's acts and practices in connection with the promotion, marketing, advertising, packaging, labeling, distribution and sale of Parkay Spray violate the Nebraska Consumer Protection Act;

    d.   Whether Defendant's acts and practices in connection with the promotion, marketing, advertising, packaging, labeling and sale of Parkay Spray breached its express and implied warranties to Plaintiff and the Class; and

    e.   Whether Defendant's conduct, as set forth herein, injured members of the Class and whether they have been damaged by the wrongs complained of herein, and if so, the measure of those damages and the nature and extent of other relief that should be provided.

    64.   A class action is superior to any other available method for the fair and efficient adjudication of this controversy and common questions of law and fact overwhelmingly predominate over any individual questions that may arise.  Proceeding as a class action provides substantial benefits to both the parties and the Court because this is the most efficient method for the fair and efficient adjudication of the controversy. Class members have suffered and will suffer irreparable harm and damage as a result of Defendant's wrongful conduct. Because of the nature of the individual Class members' claims, few, if any, could or would otherwise afford to seek legal redress against Defendant for the wrongs complained of herein, and a representative class action is therefore appropriate, the superior method of proceeding, and essential to the interests of justice insofar as the resolution of Class members' claims is concerned.  Absent a representative class action, Class members would continue to suffer losses for which they would have no remedy, and Defendant would unjustly retain the proceeds of its ill-gotten

gains.  Even if separate actions could be brought by individual members of the Class, the resulting multiplicity of lawsuits would cause undue hardship, burden and expense for the Court and the litigants, as well as create a risk of inconsistent rulings which might be dispositive of the interests of the other Class members who are not parties to the adjudications and/or may substantially impeded their ability to protect their interests.

## CLAIMS FOR RELIEF

### COUNT I
### VIOLATION OF THE NEBRASKA CONSUMER PROTECTION ACT

65.     Plaintiff incorporates by reference the allegations in all paragraphs of this Petition as though fully set forth in this paragraph.

66.     Defendant qualifies as a "person" engaged in "trade or commerce" as those terms are contemplated in the Consumer Protection Act, Neb. Rev. Stat. § 59-1602.

67.     The acts and practices engaged in by Defendant, and described herein, constitute unlawful, unfair and/or deceptive acts or practices in violation of the Nebraska Consumer Protection Act.  Neb. Rev. Stat. § 59-1602.

68.     Defendant engaged in unlawful practices including deception, false promises, misrepresentation, and/or the concealment, suppression, or omission of material facts in connection with the sale, distribution or advertisement of Parkay Spray, in violation of Neb. Rev. Stat. § 59-1602.

69.     These violations caused financial injury to the Plaintiff and the Class and bringing this claim is in the public interest.

### COUNT II
### NEBRASKA UNIFORM DECEPTIVE TRADE PRACTICES ACT

70.     Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

71.     Defendant's practices and activities described above violate the Nebraska Deceptive Trade Practices Act, Neb. Rev. Stat §87-302 in the following particulars:

    a.   By using deceptive representations in connection with its goods, in violation of Neb. Rev. Stat §87-302(4).

    b.   By representing that its goods have characteristics / ingredients, uses, benefits, or quantities that they do not have in violation of Neb. Rev. Stat. §87-305.

## COUNT III
## BREACH OF EXPRESS WARRANTY

72.     Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

73.     Beginning at an exact date unknown to Plaintiff, but at least since three years prior to the filing date of this action, and as set forth herein, Defendant made representations to the public, including Plaintiff by its advertising, packaging and other means, that Parkay Spray is "fat free", "calorie free" and "an excellent dietary choice." That promise became part of the basis of the bargain between the parties and thus constituted an express warranty.

74.     Thereon, Defendant sold the goods to Plaintiff and other Class members, who bought the goods from Defendant.

18

75.     However, Defendant breached the express warranty in that the goods did in fact contain fat and calories as set forth in detail herein.  As a result of this breach, Plaintiff and other consumers in fact did not receive goods as warranted by Defendant.

76.     As a proximate result of this breach of warranty by Defendant, Plaintiff and other consumers have been damaged in an amount to be determined at trial.

## COUNT IV
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE

77.     Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

78.     Beginning at an exact date unknown to Plaintiff, but at least since three years prior to the filing date of this action, and as set forth herein, Defendant made representations to the Class, including Plaintiff, by its advertising, packaging and other means that Parkay Spray is "fat free" and "calorie free" among other representations. Plaintiff and the Class bought those goods from Defendant.

79.     Defendant was a merchant with respect to goods of this kind, which were sold to Plaintiff and the Class, and there was in the sale to Plaintiff and other consumers an implied warranty that those goods were merchantable.

80.     However, Defendant breached that warranty implied in the contract for the sale of goods in that Parkay Spray is not, in fact, "fat free" and is not "calorie free" as set forth in detail herein.

81.     As a result of Defendant's conduct, Plaintiff and other consumers did not receive goods as impliedly warranted by Defendant to be merchantable.

82.     As a proximate result of this breach of warranty by Defendant, Plaintiff and the Class have been damaged in an amount to be determined at trial.

## COUNT V
## UNJUST ENRICHMENT

83.     Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

84.     As a result of Defendant ConAgra' fraudulent and misleading labeling, advertising, marketing and sales of Defendant ConAgra's misbranded food products, Defendant was enriched at the expense of Plaintiff and members of the Class.

85.     It would be against equity and good conscience to permit Defendant ConAgra to retain the ill-gotten benefits it received from Plaintiff and members of the Class, in light of the fact that Parkay Spray was not what Defendant purported it to be. Thus, it would be unjust and inequitable for Defendant to retain the benefits without restitution to Plaintiff and members of the Class of all monies paid to Defendant for the product at issue.

86.     As a direct and proximate result of Defendant's actions, Plaintiff and the Class have suffered damages in an amount to be proven at trial.

## COUNT VI
## INTENTIONAL MISREPRESENTATION

87.     Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

88.     Defendant materially and intentionally mislabeled its Spray Butter's nutritional values as alleged herein.

89.     Defendant's misrepresentations regarding the fat and calorie content of its Spray Butters were intended to influence the purchasing decisions of plaintiff and members of the Class who justifiably relied upon the accuracy of Defendant's labels.

90.     Defendant's negligence caused Plaintiff and the Class to purchase food they would not have purchased, and/or paid a premium price for such food products.

91.     Defendant's negligence caused Plaintiff and the Class to purchase food they would not have purchased, and/or paid a premium price for such food products.

92.     As a direct and proximate result of Defendant's actions, Plaintiff and the Class have suffered damages in an amount to be proven at trial.

## COUNT VII
## NEGLIGENT MISREPRESENTATION

93.     Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

94.     Defendant owes its customers a duty to provide accurate information concerning the nutritional value of its Spray Butters.

95.     In breach of such duty, Defendant negligently (at bottom) materially mislabeled its Spray Butter's nutritional values, as alleged herein.

96.     Defendant's misrepresentations regarding the fat and calorie content of its Spray Butters were intended to influence the purchasing decisions of plaintiff and members of the Class who justifiably relied upon the accuracy of Defendant's labels.

97.     Defendant's negligence caused Plaintiff and the Class to purchase food they would not have purchased, and/or pay a premium price for such food products.

98.     As a direct and proximate result of Defendant's actions, Plaintiff and the Class have suffered damages in an amount to be proven at trial.

## COUNT VIII
## FRAUD BY OMISSION/CONCEALMENT

99.     Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

100.     Defendant knew but actively concealed, intentionally failed to disclose, or only partially disclosed material facts regarding the nutritional content of its Spray Butter.

101.     The material facts Defendant concealed and intentionally failed to disclose include, but are not limited to the fact that Defendant's Spray Butter contains calories and fat.

102.     Plaintiff and class members did not know, and/or could not have discovered the concealed and omitted material facts described above.

103.     The facts concealed or not disclosed by Defendant are material in that Plaintiff and the Class would not have purchased the Defendant's Spray Butters had they known that the product, as consumed, contained fat and calories, or would have paid less for its product.

104.     On information and belief, Defendant intended to deceive Plaintiff and class members by concealing and omitting the material facts set forth above.

105.     Plaintiff and class members reasonably relied on Defendant's deceptive representations.

106.     Plaintiff and class members were harmed as a result of Defendant's deception, concealment and omissions, in that they lost money by purchasing the product.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff on behalf of herself and all others similarly situated, and the general public, requests that the Court enter an order or judgment against Defendant on all causes of action including the following:

107.     Certification of the action as a Class Action pursuant to Rules 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure, and appointment of Plaintiff as Class Representative and her counsel of record as Class Counsel;

108.     Damages in the amount of monies paid for Defendant's Spray Butter and/or other consequential or incidental damages;

109.     Actual damages, statutory damages, punitive or treble damages, and such other relief as provided by the statutes cited herein;

110.     Pre-judgment and post-judgment interest on such monetary relief;

111.     Equitable relief in the form of restitution, to restore monies received by Defendant as a result of the unfair, unlawful and deceptive conduct alleged herein;

112.     Injunctive relief barring Defendant from labeling its product as fat-free, and calorie-free.

113.     Injunctive relief barring Defendant from using unlawful serving sizes;

114.     The costs of bringing this suit including reasonable attorneys' fees; and

115.     All other relief to which Plaintiff and members of the Class may be entitled at law or inequity.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all claims so triable.

**THE EUREKA LAW FIRM**


/s/ Ureka Idstrom

_____
Ureka E. Idstrom        MO Bar No. 60407
6744 Holmes Road
Kansas City, MO 64131
Tel: (816) 665-3515
uidstrom@eurekalawfirm.com

**WRIGHT & FISHER**
Larry D. Wright,        MO Bar No. 55246
1000 Broadway Blvd.
Fourth Floor
Kansas City, Missouri 64105
816-471-7008
816-471-1701 (fax)
Larry@WrightandFisher.com

ATTORNEYS FOR PLAINTIFF